IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                              CRIMINAL 07-488 (ADC)

[1] JESÚS IGLESIAS-VIERA,
[2] ALEX FIGUEROA-CARRERAS,
[3] JOSE M. ENCARNACIÓN-MÁRQUEZ,
[4] RAÚL ROSADO-TORO,

Defendants.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
RE: RULE 11 PROCEEDINGS (PLEA OF GUILTY)

**I.      Procedural Background**

On November 14, 2007, a grand jury returned a twelve-count indictment against [1] Jesús Iglesias-Viera ("Iglesias-Viera"), [2] Alex Figueroa-Carreras ("Figueroa-Carreras"), [3] José M. Encarnación-Márquez ("Encarnación-Márquez"), [4] Raúl Rosado-Toro ("Rosado-Toro") (hereinafter referred to collectively as "defendants") and fifty-five other individuals. (Docket No. 2).

The defendants have agreed to plead guilty to counts one and seven of the indictment. Count one charges that beginning in or about the year 2005 until November 14, 2007, in Trujillo Alto, Carolina, and San Juan, District of Puerto Rico, and elsewhere within the jurisdiction of this court, the defendants and other individuals did knowingly and intentionally conspire, combine, and agree together and with each other and others known and unknown to the grand jury, to commit offenses against the United States, that is, to possess with intent to distribute one (1) kilogram or more of heroin, a Schedule I Narcotic Controlled Substance, fifty (50) grams or more of cocaine base ("crack"), a Schedule II Narcotic Drug Controlled Substance, five (5) kilograms or more of cocaine, a Schedule II, Narcotic Drug Controlled Substance, and detectable amounts of marihuana, a Schedule I Controlled Substance, within one thousand (1,000) feet of the real property comprising a housing facility owned by a public

housing authority, that is, Nuestra Señora de Covadonga Public Housing Project, or of a public school, that is, the Headstart Program located within Nuestra Señora de Covadonga Public Housing Project, all in violation of Title 21, United States Code, Sectioins 846, 841(a)(1), (b)(1)(C), (b)(2), and 860.

Count seven charges, in its pertinent part, that in or about the year 2005 until November 14, 2007, in Trujillo Alto, Carolina, and San Juan, District of Puerto Rico, and elsewhere within the jurisdiction of this court, the defendants and other individuals, aiding and abetting each other, did knowingly possess firearms and ammunition during and in relation to a drug-trafficking crime, as charged in count one of the indictment, which may be prosecuted in a court of the United States, all in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and 2.

**II.     Consent to Proceed Before a Magistrate Judge**

On January 14, 2009, while assisted by their respective attorneys (Juan Nieves-Cassas, José R. Olmo-Rodríguez, José R. Aguayo, and Mariangela Tirado-Vales), the defendants, by consent, appeared before the undersigned in order to change their previous not guilty pleas to pleas of guilty as to counts one and seven of the indictment. In open court the defendants were questioned as to the purpose of the hearing being held and were advised of: (a) the nature and purpose of the hearing; (b) the fact that all inquiries were to be conducted under oath and that it was expected that their answers would be truthful; (c) the potential consequences of lying under oath (such as a perjury charge); and (d) the right to have the change of plea proceedings presided by a district judge instead of a magistrate judge. The defendants were also explained the differences between the appointment and functions of the two. The defendants consented to proceed before the undersigned magistrate judge.

**III.    Proceedings Under Rule 11, Federal Rules of Criminal Procedure**

   **A.    Rule 11(c)(1) Requirements**

Rule 11 of the Federal Rules of Criminal Procedure governs the acceptance of guilty pleas to federal criminal violations. Pursuant to Rule 11, in order for a plea of guilty to constitute a valid waiver of the defendant's right to trial, guilty pleas must be knowing and voluntary: "Rule 11 was intended to ensure that a defendant who pleads guilty does so with an 'understanding of the nature of the charge and consequences of his plea.'" United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995) (quoting McCarthy v. United States, 394 U.S. 459, 467 (1969)). [There are three core concerns in these proceedings]: 1) absence of coercion; 2) understanding of the charges; and 3)

3

knowledge of the consequences of the guilty plea. United States v. Cotal-Crespo, 47 F.3d at 4 (citing United States v. Allard, 926 F.2d 1237, 1244-45 (1st Cir. 1991)). United States v. Hernández-Wilson, 186 F.3d 1, 5 (1st Cir. 1999).

### B. Admonishment of Constitutional Rights

To assure defendants' understanding and awareness of their rights, defendants were advised of their right:

1. To remain silent at trial and be presumed innocent, since it is the government who has the burden of proving them guilt beyond a reasonable doubt.

2. To testify or not to testify at trial, and that no adverse inference could be made in relation to their decision not to testify.

3. To a speedy trial before a district judge and a jury, at which they would be entitled to see and cross examine the government witnesses, present evidence on their behalf, and challenge the government's evidence.

4. To have a unanimous verdict rendered by a jury of twelve persons which would have to be convinced of defendants' guilt beyond a reasonable doubt by means of admissible evidence.

5. To use the subpoena power of the court to compel the attendance of witnesses.

Upon listening to the defendants' responses, observing their demeanor and their speaking with their respective attorneys, that to the best of counsels' belief defendants had fully understood their rights, it is determined that defendants are aware of their constitutional rights.

### C. Consequences of Pleading Guilty

Upon advising defendants of their constitutional rights, they were further advised of the consequences of pleading guilty. Specifically, defendants were advised that by pleading guilty and upon having their guilty pleas accepted by the court, they will be giving up the above rights and will be convicted solely on their statement that they are guilty.

Furthermore, the defendants were admonished of the fact that by pleading guilty they would not be allowed later on to withdraw their pleas because they eventually might disagree with the sentence imposed, and that if they violate the conditions of supervised release, that privilege could be revoked

4

and they could be required to serve an additional term of imprisonment. They were also explained that parole has been abolished.

In response to further questioning, defendants were explained and they understood that if convicted on count one, the will face the following maximum penalties: a term of imprisonment of not more than life imprisonment, a fine not to exceed eight million dollars ($8,000,000), and a term of supervised release of at least ten (10) years.[1] As to count seven, the defendants were explained that if convicted of said count they will be facing a consecutive term of imprisonment of not less than five years and not more than life imprisonment, a fine of not more than $250,000, and a term of supervised release of not more than five years. Defendant were also made aware that the court must impose a mandatory penalty assessment of one hundred dollars ($100) per offense pursuant Title 18, United States Code, Section 3013(a).

The defendant were advised that the ultimate sentence was a matter solely for the court to decide in its discretion and that, even if the maximum imprisonment term and fine were to be imposed upon them, they later could not withdraw their guilty pleas for that reason alone. The defendants understood this. The defendants were also explained what the supervised release term means.

**D. Plea Agreement**[2]

The parties have entered into a written plea agreements that, upon being signed by the government, defense attorneys and defendants, were filed and made part of the record. Defendants were clearly warned and recognized having understood that:

1. The plea agreements are not binding upon the sentencing court.

2. The plea agreements are agreements between defendants, their respective attorneys, and the attorney for the government which are presented as recommendations to the court in regards to the applicable sentencing adjustments and guidelines, which are advisory.

---

[1] The maximum penalties are duplicated because of the inclusion of the section 860 charge in count one.

[2] "Plea agreement" refers to the agreement and its supplement.

5

3.  The agreements provide sentencing recommendations and/or anticipated sentencing guideline computations, that can be either accepted or rejected by the sentencing court.

4.  In spite of the plea agreements and any sentencing recommendations contained therein, the sentencing court retains full discretion to reject such plea agreements and impose any sentence up to the maximum possible penalty prescribed by statute.

Defendants acknowledged having understood these explanations as well as all the terms and conditions of the plea agreement.

### E. Government's Evidence (Basis in Fact)

The government presented a proffer of its evidence consistent with the version of facts of the plea agreements. Since the defendants did not sign the version of the facts of the plea agreements the undersigned asked several questions to the defendants to determine whether there was a sufficient basis in fact. In particular, the defendants admitted that: (1) they conspired and agreed with other individuals in counts one and seven of the indictment to possess with intent to distribute cocaine; (2) they were leaders of the drug trafficking organization in the conspiracy charged in count one; (3) the conspiracy took place within one thousand feet (1,000) of a public housing project or a Head Start Program; (4) they possessed between 2005 and November of 2007 firearms in relation to the commission of the drug-trafficking offense charged in count one; (5) they helped each other in possessing said firearms; (6) they committed these offense knowingly, that is not by accident or mistake; and (7) they committed these offenses willingly, that is not because anybody forced them to commit them. In addition, each defendant accepted responsibility for a particular amount of the cocaine involved in the conspiracy: Iglesias-Viera: 5 - 15 kilograms of cocaine; Figueroa-Carreras: 3.5 - 5 kilograms; Encarnación-Márquez: 2 - 3.5 kilograms of cocaine; and Rosado-Toro: 3.5 - 5 kilograms of cocaine. Accordingly, it is determined that there is a basis in fact and evidence to establish all the elements of the offenses charged in counts one and seven.

### F. Voluntariness

The defendants accepted that no threats had been made to induce them to plead guilty and that they had not been forced or coerced into entering guilty pleas.

**G. Special Warnings or Circumstances**

1. <u>Waiver of Appeal</u>: The defendants were explained, and they understood, that if the court accepts their plea agreements and sentences them according to their terms and conditions, they will be surrendering their right to appeal the sentence and judgment in this case.

2. <u>Package Plea Issues</u>: All four defendants were part of a "package plea". Thus, the undersigned inquired more extensively as to the voluntariness of their decisions to enter their guilty pleas. In particular, the defendants were asked whether they were pleading guilty because somebody else was pleading guilty, to which all of them replied in the negative. The defendants were asked whether they had been pressured by any other codefendant to enter a guilty plea, to which they replied in the negative. They were also asked whether they understood that the fact that a codefendant was pleading guilty does not mean that any of them had to enter a guilty plea, to which they replied in the affirmative. In addition, they were asked whether they understood that the sentences of each one of them could be different, to which they replied in the affirmative. Moreover, they were asked whether any of the codefendants in court had made any promise of a benefit to any of them or to a relative of them in exchange for a guilty plea, to which they replied in the negative. Finally, each defendant was asked individually whether he was entering a guilty plea because he believed that he was guilty of the offenses in counts one and seven. All four defendants replied in the affirmative. Accordingly, the undersigned is satisfied that each defendant is individually entering his guilty plea voluntarily in the absence of any coercion despite the fact that their plea agreements are part of a "package plea".

3. <u>Figueroa-Carreras' Attorney-Client Concerns</u>: Prior to the hearing, counsel José R. Olmo-Rodríguez advised the court that his client had previously requested a change of attorney and that said motion had been denied by the court. In light of those circumstances, the undersigned asked Figueroa-Carreras about his degree of satisfaction with the legal services provided by his attorney. Figueroa-Carreras asserted that his attorney was competent in providing accurate legal advice to him, but ineffective. When asked why he believed that his attorney was ineffective, Figueroa-Carreras claimed that his attorney had failed to secure more favorable terms for him in his plea agreement. Taking into account that counsel Olmo-Rodríguez advised the court that he had made various attempts to negotiate

7

better terms for his client in the plea agreement (including meeting with AUSA George A. Massuco's supervisor) and that AUSA Massuco informed that he had met with counsel Olmo-Rodríguez at least on five occasions and that the United States was firm in not offering any better terms to Figueroa-Carreras, the undersigned explained to Figueroa-Carreras that the fact in and of itself that an attorney, after engaging in his best efforts, cannot persuade the government to offer better terms in a plea agreement does not necessarily mean that the attorney is ineffective.  The defendant acknowledged having understood this explanation.  Furthermore, the undersigned explained to Figueroa-Carreras that he was free to reject the plea agreement and proceed to trial.  In particular, Figueroa-Carreras was advised that even if his attorney had recommended him to accept the plea agreement, he was free to reject his attorney's advice and proceed to trial if he believed that he was innocent of the charges pending against him.  He was also explained that if he wished, he could also opt for the alternative of a "straight plea", that is the entry of a guilty plea without an agreement with the government.  Figueroa-Carreras acknowledged having understood these explanations and advised the court that he wished to proceed with the change of plea hearing.  Subsequently during the hearing, all four defendants, including Figueroa-Carreras,  indicated that they were satisfied with their respective attorneys.

**IV.   Conclusion**

The defendants, by consent, have appeared before me pursuant to Rule 11, Federal Rules of Criminal Procedure, and have entered a plea of guilty as to counts one and seven of the indictment. After cautioning and examining the defendants under oath and in open court, concerning each of the subject matters mentioned in Rule 11, as described in the preceding sections, I find that defendants [1] Jesús Iglesias-Viera, [2] Alex Figueroa-Carreras, [3] José M. Encarnación-Márquez, and [4] Raúl Rosado-Toro are competent to enter these guilty pleas, are aware of the nature of the offenses charged and the maximum statutory penalties that the same carry, understand that the charges are supported by the government's evidence, have admitted to every element of the offenses charged, and have done so in an intelligent and voluntary manner with full knowledge of the consequences of their guilty pleas. Therefore, I recommend that the court accept the guilty pleas of the defendants and that the defendants be adjudged guilty as to counts one and seven of the indictment.

8

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the report and recommendation is a waiver of the right to review by the district court. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986).

SO RECOMMENDED.

In San Juan, Puerto Rico, this 15th day of January, 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE